**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.
Jordan D. Weiss, Esq

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

MICHAEL KRAMER, A/K/A MICHAEL B.
KRAMER AND MARGARET E. KRAMER,
A/K/A MARGARET COHEN, A/K/A
MARGARET MILLS,

                Debtors.

Chapter 7
Case No. 17-70741 (REG)

-------------------------------------------------------------x
R. KENNETH BARNARD, as CHAPTER 7
TRUSTEE OF THE ESTATES OF MICHAEL B.
KRAMER AND MARGARET E. KRAMER
A/K/A MARGARET COHEN, A/K/A
MARGARET MILLS,

                Plaintiff,

        -against-

NATIONSTAR MORTGAGE LLC, as
SERVICING AGENT FOR WELLS FARGO
BANK, NATIONAL ASSOCIATION, as
TRUSEE FOR SECURITIZED ASSET BACKED
RECEIVABLES LLC TRUST 2005-FR4
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-FR4, JOHN DOE
"1" THROUGH "100", JANE DOE "1"
THROUGH "100", JOHN DOE
CORPORATIONS "1" THROUGH "100", and
OTHER JOHN DOE ENTITIES "1" THROUGH
"100",

                Defendants.

Adv. Pro. No. _____

-------------------------------------------------------------x

      Plaintiff, R. Kenneth Barnard, as Chapter 7 Trustee (the "Plaintiff") of the bankruptcy

estates of Michael B. Kramer and Margaret E. Kramer a/k/a Margaret Cohen, a/k/a Margaret Mills

1

(the "Debtors"), by his attorneys, LaMonica Herbst & Maniscalco, LLP, as and for his complaint against Defendants, Nationstar Mortgage LLC, as Servicing Agent for Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC Trust 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 (the "Defendant"), as well as John Doe "1" through "100", Jane Doe "1" through "100", John Doe Corporations "1" through "100" and Other John Doe Entities "1" through "100" (collectively the "Unnamed Defendants"), being fictitious names and unknown to the Plaintiff, the party intended being the party, if any, in interest to the First Fremont Mortgage (as defined below), alleges and says:

## NATURE OF THE PROCEEDING

1. The Plaintiff brings this action pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") Article 15 to secure a declaratory judgment avoiding, cancelling and discharging the note and mortgage of record referred to below, and attacking the nature extent and validity of such lien which affects the real property described below, and preserving them for the benefit of the Debtors' estates.

2. This action is brought by the Plaintiff in his capacity as the representative of the Debtors estates and for the benefit of the creditors of the Debtors and other parties in interest.

## JURISDICTION AND VENUE

3. Since this action arises under the pending chapter 7 bankruptcy case of the Debtors, the United States Bankruptcy Court, Eastern District of New York (the "Court"), has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334 and Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. The statutory predicates for the claims asserted herein are §§ 105, 502, 506, 544, and 551 of Title 11 of the United States Code (the "Bankruptcy Code"), New York Civil Practice Law

and Rule § 213 ("CPLR § 213), RPAPL § 1501, 28 U.S.C. § 2201, and Bankruptcy Rules 6009 and 7001.

5. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(C), (b)(2)(K) and (b)(2)(O).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

7. In accordance with Bankruptcy Rule 7008, the Plaintiff consents to the entry of final orders and judgment by this Court.

## BACKGROUND

8. On February 9, 2017 (the "Filing Date"), the Debtors filed a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the Bankruptcy Code in this Court.

9. R. Kenneth Barnard, Esq., was appointed the interim Chapter 7 Trustee, has duly qualified, and is the permanent Trustee of the Debtors' estates.

## PARTIES

10. Upon information and belief, the Defendant is a limited liability company with its principal place of business at 8950 Cypress Waters Boulevard, Coppell, Texas 75019.

11. Upon information and belief, the Defendant is formed under the laws of the State of Delaware and is the purported owner and holder of the note and mortgage described herein.

12. Upon information and belief, each of the Unnamed Defendants is a corporation, partnership, limited liability company, national association, or some other entity, or an individual, and may be holders of the interest, if any, in the Fremont First Mortgage (as defined below).

13. As of the Filing Date, the Plaintiff was vested with all of the Debtors' legal and equitable interests in property, including their interests in the real property subject to the Defendant's note and mortgage.

14. Bankruptcy Code § 544(a) confers upon a trustee in bankruptcy the status of: (a) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (b) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or (c) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF**

15. As of the Filing Date, the Debtors, as husband and wife, were the owners as tenants by the entirety of the real property known as, and located at, 91 Whiskey Road, Middle Island, New York 11953, designated parcel no. 0200-288.00-01.00-004.003 on the tax map of the County of Suffolk (the "Property").

16. As of the Filing Date, the Debtors scheduled creditors having nonpriority unsecured claims totaling $58,150.96.

17. On or about October 3, 2001, a note and mortgage (the "Fremont First Mortgage") covering the Property were executed by the Debtors and delivered to Fremont Investment & Loan ("Fremont"), in the sum of Two Hundred and Twelve Thousand ($212,000.00) Dollars, which mortgage was recorded in the Office of the Clerk of Suffolk County on January 9, 2002, at Liber 20004 of Mortgages, page 816. A copy of the Fremont First Mortgage is annexed hereto as Exhibit "A".

18.     In connection with the Fremont First Mortgage, the Debtors acquired title to the Property by deed dated January 9, 2002.

19.     On or about March 11, 2005, a note (the "2005 Note") and mortgage (the "2005 Mortgage") covering the Property were executed by the Debtors and delivered to Fremont, in the sum of Three Hundred and Eighty-Four Thousand ($384,000.00) Dollars, which mortgage was recorded in the Office of the Clerk of Suffolk County on May 26, 2005, at Liber 21058 of Mortgages, page 224. A copy of the 2005 Note and 2005 Mortgage are annexed hereto as Exhibits "B" and "C", respectively.

20.     Upon information and belief, the 2005 Note and 2005 Mortgage were a refinance of the Fremont First Mortgage and, through the funds advanced in connection with the 2005 Note and 2005 Mortgage, the Fremont First Mortgage was satisfied by payment in full.

21.     Upon information and belief, Fremont, the Unnamed Defendants and/or the title company that administered the closing of the 2005 Note and 2005 Mortgage failed to record a satisfaction of the Fremont First Mortgage.

22.     Pursuant to the terms of the 2005 Note, the indebtedness of Three Hundred and Eighty-Four Thousand ($384,000.00) Dollar was payable in installments of Two Thousand and Forty-Eight ($2,048.00) Dollars on the May 1, 2005, and the like sum on the first day of each and every month consecutively thereafter until the April 1, 2035, when the entire unpaid principal balance became due and payable. See Exhibit "B".

23.     By assignment of mortgage dated November 1, 2006 and recorded on November 21, 2006, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Fremont, assigned the 2005 Mortgage (the "Wells Fargo Assignment") to Wells Fargo Bank, N.A. as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates Series

2004-FR4 ("Wells Fargo"). A copy of the Wells Fargo Assignment is annexed hereto as Exhibit "D".

24. Upon information and belief, Fremont went out of business in or about 2010 and no longer exists as a banking institution.

25. Upon information and belief, Wells Fargo subsequently assigned the 2005 Mortgage to the Defendant.

26. With respect to the 2005 Mortgage, Fremont is a predecessor in interest to the Defendant.

27. With respect to the 2005 Mortgage, Wells Fargo is a predecessor in interest to the Defendant.

28. On August 2, 2006, prior to the Wells Fargo Assignment Fremont sent the Debtors a notice of default (the "Notice of Default") by and through its servicer, Countrywide Home Loans. A copy of the Notice of Default is annexed hereto as Exhibit "E".

29. In the Notice of Default, Fremont informed the Debtors that they had defaulted under the 2005 Note with respect to a payment due for July, 2006. See Exhibit "E".

30. The Notice of Default further provided that "[i]f the default is not cured on or before September 6, 2006, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." See Exhibit "E" (emphasis in original).

31. The defaults under the 2005 Note were not cured on or before September 6, 2006.

32. In accordance with the Notice of Default, the 2005 Note was accelerated as of September 7, 2006.

33. Because Fremont elected to accelerate the entire amount due under the 2005 Note secured by the 2005 Mortgage, the six-year statute of limitations for starting an action to foreclose on the 2005 Mortgage or collect on the 2005 Note pursuant to CPLR § 213(4) began to run on September 7, 2006.

34. On October 19, 2006, in accordance with the Wells Fargo Assignment, Wells Fargo commenced an action to foreclose on the 2005 Mortgage in the Supreme Court of the State of New York, County of Suffolk (the "State Court"), under Index No. 29243/2006 (the "2006 Foreclosure Proceeding") by filing a summons complaint (the "2006 Complaint"). A copy of the Complaint is annexed hereto as Exhibit "F".

35. In the 2006 Complaint, Wells Fargo alleged that the Debtors "failed to comply with the condition of the mortgage and note by failing to pay principal and interest and/or taxes, assessment, water rates, insurance premiums, escrow and/or other charges that came due and payable on the 10th day of July, 2006 as more fully set forth below. Accordingly, [Wells Fargo] elects to call due the entire amount secured by the mortgage." See Exhibit "F", at 3.

36. In the event the Notice of Default did not accelerate the 2005 Note, the 2005 Note was accelerated as of October 19, 2006, the date of the commencement of the 2006 Foreclosure Proceeding.

37. On October 2, 2012, Wells Fargo and the Debtors executed a stipulation of discontinuance of the 2006 Foreclosure Proceeding, annexed to which was an attorney affirmation (the "2012 Stipulation of Discontinuance"). A copy of the 2012 Stipulation of Discontinuance is annexed hereto as See Exhibit "G".

38. The attorney affirmation annexed to the 2012 Stipulation of Discontinuance provides "[t]hat the reason for this request for cancellation is to allow the plaintiff to verify the assignment chain of the note and mortgage." See Exhibit "G", at 7.

39. The 2012 Stipulation of Discontinuance does not expressly state that the 2005 Note acceleration was being revoked.

40. The 2012 Stipulation of Discontinuance does not expressly state that the 2005 Mortgage acceleration was being revoked.

41. The 2012 Stipulation of Discontinuance does not expressly state that the 2005 Note was being deaccelerated.

42. The 2012 Stipulation of Discontinuance does not evidence any intent of Wells Fargo to revoke the acceleration of the 2005 Note.

43. The 2012 Stipulation of Discontinuance does not evidence any intent of Wells Fargo to deaccelerate the 2005 Note.

44. The acceleration of the 2005 Note was not revoked by the 2012 Stipulation of Discontinuance.

45. The 2005 Note was not deaccelerated by the 2012 Stipulation of Discontinuance.

46. The 2005 Note was never deaccelerated.

47. Upon information and belief, the 2012 Stipulation of Discontinuance was executed but not filed with the State Court until on or about April 8, 2013.

48. Upon information and belief, the 2006 Foreclosure Proceeding was not discontinued by the State Court until on or about April 8, 2013.

49. On December 12, 2012, Wells Fargo commenced a second action to foreclose on the 2005 Mortgage in the Supreme Court of the State of New York, County of Suffolk (the "State

Court"), under Index No. 12-37227 (the "2012 Foreclosure Proceeding") by filing a complaint (the "2012 Complaint"). A copy of the 2012 Complaint, with the attachments thereto, is annexed hereto as Exhibit "H".

50. On March 20, 2014, Wells Fargo and the Debtors executed a stipulation of discontinuance of the 2012 Foreclosure Proceeding, annexed to which was an attorney affirmation (the "2014 Stipulation of Discontinuance"). A copy of the 2014 Stipulation of Discontinuance is annexed hereto as Exhibit "I".

51. The attorney affirmation annexed to the 2014 Stipulation of Discontinuance provides "[t]hat the reason for this request for cancellation is to allow the plaintiff to comply with RPAPL §1304" See Exhibit "I", at 2.

52. The 2014 Stipulation of Discontinuance does not expressly state that the 2005 Note acceleration was being revoked.

53. The 2014 Stipulation of Discontinuance does not expressly state that the 2005 Mortgage acceleration was being revoked.

54. The 2014 Stipulation of Discontinuance does not expressly state that the 2005 Note was being deaccelerated.

55. The 2014 Stipulation of Discontinuance does not evidence any intent of Wells Fargo to revoke the acceleration of the 2005 Note.

56. The 2014 Stipulation of Discontinuance does not evidence any intent of Wells Fargo to revoke the acceleration of the 2005 Mortgage.

57. The 2014 Stipulation of Discontinuance does not evidence any intent of Wells Fargo to deaccelerate the 2005 Note.

58. The acceleration of the 2005 Note was not revoked by the 2014 Stipulation of Discontinuance.

59. The acceleration of the 2005 Mortgage was not revoked by the 2014 Stipulation of Discontinuance.

60. The 2005 Note was not deaccelerated by the 2014 Stipulation of Discontinuance.

61. Upon information and belief, on or about January 17, 2017, Wells Fargo commenced a third action to foreclose on the Mortgage in the Supreme Court of the State of New York, County of Suffolk (the "State Court"), under Index No. 601699/2017 (the "2017 Foreclosure Proceeding") by filing a complaint.

62. Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Note expired at or about September 7, 2012.

63. Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Mortgage expired at or about September 7, 2012.

64. In the event the Notice of Default did not accelerate the 2005 Note, by virtue of the 2006 Complaint, pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Note expired at or about October 20, 2012.

65. Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Note expired prior to the commencement of the 2012 Foreclosure Proceeding.

66. Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Mortgage expired prior to the commencement of the 2012 Foreclosure Proceeding.

67. Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Note expired prior to the commencement of the 2017 Foreclosure Proceeding.

68.     Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Mortgage expired prior to the commencement of the 2017 Foreclosure Proceeding.

69.     Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Note expired prior to the Filing Date.

70.     Pursuant to CPLR § 213(4), the statute of limitations to enforce the 2005 Mortgage expired prior to the Filing Date.

### FIRST CLAIM FOR RELIEF
(Declaratory Judgment)

71.     The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "70" as if set forth fully herein.

72.     Upon information and belief, the Fremont First Mortgage was satisfied by payment in full from the proceeds advanced in connection with the 2005 Note and 2005 Mortgage.

73.     Upon information and belief, Fremont, the Unnamed Defendants, and/or the title company that administered the closing of the 2005 Note and 2005 Mortgage failed to record a satisfaction of the Fremont First Mortgage.

74.     Accordingly, there is no amount due and owning under the Fremont First Mortgage and the Plaintiff is entitled to a judgment declaring: (a) that the Fremont First Mortgage is satisfied; (b) that the Fremont First Mortgage secures a claim against a debtor that is not an allowed secured claim; (c) avoiding the Fremont First Mortgage pursuant to 11 U.S.C. § 506(d); and (e) preserving the Fremont First Mortgage for the benefit of the Debtors' estates pursuant to Bankruptcy Code § 551.

## SECOND CLAIM FOR RELIEF
(Declaratory Judgment)

75. The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "74" as if set forth fully herein.

76. The Defendant claims an interest in the Property adverse to that of the Plaintiff because of the 2005 Note and 2005 Mortgage.

77. The 2005 Note and 2005 Mortgage and all indebtedness secured by the 2005 Note and 2005 Mortgage became due and payable on or about September 7, 2006.

78. In the event the Notice of Default did not accelerate the 2005 Note, the 2005 Note and all indebtedness secured by the 2005 Mortgage became due and payable on October 19, 2006.

79. Upon information and belief, there has been no payment upon the 2005 Mortgage, 2005 Note or indebtedness whether by way of principal or interest at any time since the June, 2006.

80. The six years statute of limitations for commencing an action to foreclose on the 2005 Mortgage or an action on the 2005 Note for principal or for any interest thereon, pursuant to Civil Practice Law and Rule § 213(4), began to run on or about September 7, 2006 and expired on or about September 7, 2012, six years after Fremont chose to accelerate the 2005 Note.

81. In the alternative, if Fremont did not accelerate the 2005 Note by the Notice of Default, the six years statute of limitation for bringing an action to foreclose on the 2005 Mortgage pursuant to Civil Practice Law and Rule § 213(4) or bring an action on the 2005 Note for principal or for any interest thereon began to run on October 19, 2006 and expired on or about October 20, 2012, six years after Wells Fargo commenced the 2006 Foreclosure Proceeding.

82. The Defendant and/or its predecessors in interest, Wells Fargo and Fremont, never deaccelerated the 2005 Note.

83. The statute of limitations to commence an action to foreclose the 2005 Mortgage or start any action on the 2005 Note for principal or for any interest thereon was not tolled or suspended prior to the commencement of the 2012 Foreclosure Proceeding and, therefore, had expired prior to the commencement of the 2012 Foreclosure Commencement Date.

84. The statute of limitations to commence an action to foreclose the 2005 Mortgage or start any action on the 2005 Note for principal or for any interest thereon was not tolled or suspended prior to the commencement of the 2017 Foreclosure Proceeding and, therefore, had expired prior to the commencement of the 2017 Foreclosure Commencement Date.

85. The statute of limitations to commence of an action to foreclose the 2005 Mortgage or start any action on the 2005 Note for principal or for any interest thereon was not tolled or suspended prior to the Filing Date and, therefore, had expired prior to the Filing Date.

86. Collection on the 2005 Note and/or foreclosure on the 2005 Mortgage became time barred prior to the Filing Date and, thus, the 2005 Note and 2005 Mortgage are unenforceable.

87. Any interest that the Defendant ever had or claims to have had in the Property and any and all liens or encumbrances thereon that may have existed or be claimed to have existed in favor of the Defendant are null and void and of no force and effect as against the Plaintiff and the Debtors' estates and the Plaintiff holds the Property free and clear from any claim, lien or encumbrance arising from the 2005 Note and 2005 Mortgage or the Defendant's rights therein.

88. The Defendant is not an infant, otherwise without mental capacity, or under any other disability.

89. The judgment in this action will not affect a person not in being or ascertained at the commencement of this action, who by any contingency contained in a devise or grant or otherwise could afterward become entitled to a beneficial estate or interest in the Property involved herein.

90.     The Plaintiff has not sought the relief requested herein before any other Court.

91.     The Plaintiff is entitled to a judgment against the Defendant: (a) declaring that the Defendant and every person claiming under the Defendant be forever barred from any and all claims to the estate or interest in the Property; (b) declaring that the Plaintiff is the lawful owner and vested in title to the Property described in this complaint, free and clear of the 2005 Note and 2005 Mortgage; (c) declaring that the 2005 Note and 2005 Mortgage are void, cancelled and discharged pursuant to 11 U.S.C. § 506(d) and/or 544; (d) directing the Clerk of the County of Suffolk to cancel and discharge of record the 2005 Mortgage; and (e) preserving the 2005 Note and 2005 Mortgage for the benefit of the Debtors' estates pursuant to Bankruptcy Code § 551.

**WHEREFORE**, the Plaintiff demands judgment as follows:

(i)     Determining that the Fremont First Mortgage is satisfied, that the Unnamned Defendants hold no secured claim against the Debtors' estates and that the lien related to the Fremont First Mortgage is void pursuant to Bankruptcy Code § 506(d);

(ii)    Declaring that the Fremont First Mortgage is preserved for the benefit of the Debtors' estates pursuant to Bankruptcy Code § 551; and

(iii)   The Defendant and every person claiming under the Defendant be forever barred from any and all claims to an estate or interest in the Property;

(iv)    Declaring that the 2005 Note and 2005 Mortgage are void, cancelled and discharged;

(v)     Directing the Clerk of the County of Suffolk to cancel and discharge of record the 2005 Mortgage;

(vi)    Determining that the Defendant holds no secured claim against the Debtors' estates and that the lien related to the 2005 Mortgage is void pursuant to Bankruptcy Code § 506(d);

(vii)   Disallowing the Defendant's claim against the Debtors' estates in its entirety pursuant to Bankruptcy Code § 502;

(viii)  Declaring that the 2005 Note and 2005 Mortgage are preserved for the benefit of the Debtors' estates pursuant to Bankruptcy Code § 551; and

    (ix) That it be adjudged and finally determined that the Plaintiff is the lawful owner and vested in title to the Property, free and clear of the 2005 Note and 2005 Mortgage; and

    (x) Such other and further relief as the Court may deem just, equitable and proper.

Dated: Wantagh, New York
   January 3, 2018

            **LAMONICA HERBST & MANISCALCO, LLP**
            Counsel to the Trustee

       By: *s/ Joseph S. Maniscalco*
          Joseph S. Maniscalco, Esq.
          Jordan D. Weiss, Esq.
          3305 Jerusalem Avenue, Suite 201
          Wantagh, New York 11793
          (516) 826-6500