UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:


Michael Kramer aka Michael B. Kramer,                    Chapter 7
and Margaret E. Kramer aka Margaret Cohen
aka Margaret Mills,
                                                         Case No. 17-70741-reg




                              Debtors.

----------------------------------------------------------------x
R. Kenneth Barnard, as Chapter 7 Trustee of the Estates of
Michael Kramer aka Michael B. Kramer,
and Margaret E. Kramer aka Margaret Cohen
aka Margaret Mills,

                              Plaintiff,

                                                         Adv. Pro. No. 18-08002-reg

          -against-


Nationstar Mortgage LLC, as Servicing Agent for Wells
Fargo Bank, National Association, as Trustee for Securitized
Asset Backed Receivables LLC Trust 2005-FR4 Mortgage
Pass-Through Certificates, Series 2005-FR4, John Doe "1"
Through "100", and Other John Doe Entities "1" Through
"100",
                              Defendants.
----------------------------------------------------------------x


## MEMORANDUM DECISION



          This matter is before the Court pursuant to motions for summary judgment in an adversary

proceeding commenced in the case of   Michael Kramer and Margaret Kramer (the "Debtors") by Robert

Pryor, the Chapter 7 trustee ("Trustee" or "Plaintiff") seeking to have mortgages recorded against the

Debtors' residence deemed unenforceable. One mortgage, held by Fremont Investment & Loan ("Fremont") and dating from 2001, was satisfied by a subsequent mortgage loan made by Fremont Investment & Loan in 2005, which was ultimately assigned to Wells Fargo, National Association, as trustee for Securitized Asset Backed Receivables LLC Trust 2005-FR4 Mortgage Pass-Through Certificates, Series 2005 FR4 ("Wells Fargo").  Nationstar Mortgage LLC ("Nationstar" or "Defendant") is the servicer for Wells Fargo on this mortgage loan. In addition to seeking a determination on summary judgment that the two mortgages of record on the Debtors' residence should be canceled and discharged, the Trustee also seeks to have the note held by Wells Fargo deemed unenforceable.  While there is no opposition to the relief sought in the Trustee's motion with respect to Fremont's mortgage of record, the Trustee cannot utilize the Bankruptcy Code to accomplish this goal.  Instead, the Trustee should proceed in state court to cancel Fremont's mortgage as a lien of record.

The Trustee also seeks entry of summary judgment that the mortgage held by Wells Fargo is unenforceable as the statute of limitations to commence a foreclosure action has expired. Therefore, while the mortgage held by Wells Fargo was validly executed and recorded, the mortgage is no longer enforceable, and the note executed by the Debtors reflecting this obligation is likewise unenforceable. The Defendant moves for summary judgment as well, arguing that a foreclosure action was properly commenced within the six-year statute of limitations and remains pending in New York State Supreme Court, albeit stayed by the filing of this bankruptcy case.  As a result, its mortgage lien and note are fully enforceable under New York law and are valid claims against the Debtors and their real property.

Applying the proper Bankruptcy Code sections to this matter is not difficult, nor does it raise novel questions. Every day, bankruptcy courts are asked to rule on what is essentially a claims objection. However, the challenge facing the Court in this case involves the application of New York real property and contract law to the facts and the application and effect of the relevant bankruptcy statutes. Because

both parties filed for summary judgment, the Court has to first determine whether it could resolve the issues as presented based on the stipulated facts, or whether an evidentiary hearing is required. As to that issue the Court agrees with the parties that this dispute does not involve a disagreement about the relevant facts, but rather disputes of law, which may be resolved by summary judgment.

Put simply, the Court is asked to determine whether under applicable New York law Wells Fargo properly commenced a foreclosure action within the six-year period from the time the mortgage and note were accelerated. The answer to that question, as set forth in this decision, requires a detailed analysis of the factual record before the Court as agreed to by the parties and an analysis of what are admittedly divergent opinions by New York courts.

The Court is mindful that the current state of the law may be considered unsettled with respect to whether a notice of default like the notice received by the Debtors can trigger acceleration of the mortgage debt, and the extent to which the withdrawal of a foreclosure action can be viewed as a revocation of a notice of acceleration of a mortgage debt.  However, it is undisputed by any court that has been exposed to the human carnage resulting from the mortgage crisis that is still being felt daily in state and federal courts across the country that some very real and systemic problems were exposed in the litigation that followed. These problems are attributable to both the borrowers and the financial institutions that made the loans. Nevertheless, a significant factor in the rise of problematic foreclosure proceedings can be traced to the mutation of the traditional relationship between the borrower and the mortgagee.  Once lenders stopped holding mortgages and commenced entering into complex transactions to sell the mortgages, which were then pooled and sold to trusts as collateralized debt obligations, the seeds of the mortgage crisis were planted.  The most obvious result was that millions of foreclosure proceedings were commenced in all parts of the country causing severe hardships to the homeowners and their communities. This Court and its sister bankruptcy courts have consistently maintained that while compassion is an essential element of the bankruptcy process, creditors have an absolute right to exercise all available remedies to the fullest extent of the law. However, they must abide by the rules, just as the

borrowers must play by the rules. This case highlights this tension between the laws and procedures that protect homeowners from the unlawful taking of their homes, and the laws that permit the lenders to enforce their rights in foreclosure proceedings.

If the Court were to find that the statute of limitations had not expired, it would have had to overlook inherent inconsistencies in the Defendant's various arguments.  In addition, the Court would have to find that a notice of default stating that the note would be accelerated by a date certain was of no consequence, and a foreclosure action pursuant to which the lender represented that it held the note was a nullity.  The Defendant's core argument is that the notice of default is irrelevant and that because the Defendant did not have the legal authority to commence the first foreclosure action, that action should not count.  The Court is not prepared to find that a lender, because of its own failures to either understand the law or failure to abide by the law, is entitled to a do-over in order to negate the consequences of its actions. The result of the lender's inability to follow the clear and unambiguous procedures in this matter leave the lender in a circumstance where the applicable statute of limitations has expired, leaving the note and mortgage held by Wells Fargo unenforceable.  For these reasons and the reasons that follow, the Trustee is entitled to entry of an order directing that the note and mortgage held by Wells Fargo be discharged and canceled.

### Procedural History

On February 9, 2017, the Debtors filed a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the Bankruptcy Code.  The Trustee was appointed as the interim Chapter 7 Trustee, has duly qualified, and is the permanent trustee of the Debtors' estate. On March 22, 2017, a Notice of Discovery of Assets was filed, advising the creditors in the case that all proofs of claim must be filed on or before June 20, 2017.  On April 3, 2017, Nationstar filed a motion ("Lift Stay Motion") to vacate the automatic stay with respect to the Debtors' residence located at 91 Whiskey Road, Middle Island, NY (the "Property").  On May 5, 2017, the Trustee filed

opposition to the Lift Stay Motion.  On September 11, 2017, Nationstar withdrew the Lift Stay

Motion. On January 3, 2018, the Trustee filed this adversary proceeding.  On February 26, 2018,

Nationstar filed a motion to dismiss the adversary proceeding, and on April 16, 2018, the Trustee

filed opposition to the motion to dismiss.  On April 23, 2018, Nationstar filed a reply, and at a

hearing held on April 30, 2018, the Court denied the motion to dismiss the adversary proceeding.

Nationstar filed an answer to the complaint on July 16, 2018, and an amended answer on August

7, 2018.

On May 6, 2019, Nationstar filed a motion for summary judgment ("Nationstar Motion").

On May 29, 2019, the Trustee filed opposition to the Nationstar Motion.  On June 13, 2019,

Nationstar filed a reply.  On May 6, 2019, the Trustee also filed a motion for summary Judgment

("Trustee Motion").  On May 29, 2019, Nationstar filed opposition to the Trustee Motion.  On

June 13, 2019, the Trustee filed a reply.  A hearing on the Nationstar Motion and the Trustee

Motion was held on June 19, 2019.   On August 8, 2019, the Court made a request by letter for

any additional submissions regarding the location of the note that is the subject of this adversary

proceeding from October 17, 2006 through January 30, 2017.  On August 28, 2019, counsel to

Nationstar responded.  Thereafter, the matter was marked submitted.

**Facts**

The following is taken from the Joint Statement of Material Facts and from the exhibits

provided by the Trustee and Nationstar.  On October 3, 2001, the Debtors borrowed the principal

sum of $212,000 (the "Fremont First Loan") from Fremont Investment & Loan ("Fremont").

The Fremont First Loan is memorialized by a note in the principal amount of $212,000 (the

"Fremont First Note") dated October 3, 2001.  As security for the Fremont First Note, the

Debtors executed a mortgage dated October 3, 2001 (the "Fremont First Mortgage") in favor of

Fremont, which encumbered the Property.  The Fremont First Mortgage was recorded with the

Suffolk County Clerk's Office on January 9, 2002.

On March 11, 2005, the Debtors borrowed the principal sum of $384,000 (the "Loan")

from Fremont.  The Loan is memorialized by a note in the principal amount of $384,000 (the

"2005 Note") which was executed by the Debtors.  Trustee's Ex. A.   The 2005 Note contains the

following relevant provisions:

 (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay
the overdue amount by a certain date, the Note Holder may require me to pay immediately the
full amount of Principal which has not been paid and all the interest that I owe on that amount.
That date must be at least 30 days after the date on which the notice is mailed to me or delivered
by other means.


Trustee's Ex. A, section 7(C).

The Loan was a refinance of the Fremont First Mortgage and/or Fremont First Note and the

proceeds of the Loan satisfied the Fremont First Note.  There are no amounts due and owing

under the Fremont First Mortgage and/or Fremont First Note.  There is no evidence in the record

that a satisfaction of the Fremont First Mortgage was recorded. As security for the 2005 Note,

the Debtors executed a mortgage, dated March 11, 2005 (the "2005 Mortgage") in favor of

Fremont, which encumbered the Property.  Trustee's Ex. B. The 2005 Mortgage was recorded

with the Suffolk County Clerk's Office on May 26, 2005.

The 2005 Mortgage contains the following language regarding a default in payment by

the Debtors:

Lender may require that I pay immediately the entire amount then remaining unpaid
under the Note and under this Security Instrument.  Lender may do this without making
any further demand for payment.  This requirement is called "Immediate Payment in
Full."  If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take

away all of my remaining rights in the Property and have the Property sold.  At this sale Lender or another Person may acquire the Property. …

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument:

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) the promise or agreement that I failed to keep or the default has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default.  That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

Trustee's Ex. B, section 22.


By a chain of assignments, the 2005 Mortgage was assigned originally from Fremont to its current owner, Wells Fargo.  As is often the case with mortgage assignments during the period of time in question, the route was circuitous.  Specifically, by Assignment of Mortgage dated November 1, 2006, Fremont assigned the 2005 Mortgage to Wells Fargo.  However, this assignment contained an error in the digit in the Series date of the assignee.  This error was corrected by Correction Assignment of Mortgage five and a half years later on May 8, 2013.  Thereafter, by Assignment of Mortgage dated June 3, 2014, Wells Fargo assigned the 2005 Mortgage to the Defendant.  Thereafter, by Assignment of Mortgage dated December 12, 2016, the Defendant assigned the 2005 Mortgage back to Wells Fargo.  Trustee's Ex. C.  The

Defendant is the servicer of the 2005 Mortgage, on behalf of Wells Fargo, and the Defendant and/or Wells Fargo hold the 2005 Note.

The Debtors failed to make the monthly payment due on June 1, 2006 under the 2005 Note. Trustee's Ex. D. On July 3, 2006, Countrywide Home Loans, as servicer of the 2005 Note at that time, sent a letter ("First Default Notice") to the Debtors stating that the 2005 Note was in default. In order to cure the default, the Debtors were required to make the cure payment on or before August 7, 2006. The First Default Notice also states as follows:

"If the default is not cured on or before August 7, 2006, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." Trustee's Ex. F (emphasis in original). The default was not cured on or before August 7, 2006, and on August 2, 2006, prior to the expiration of the cure date set forth in the First Default Notice, Countrywide sent a letter ("Second Default Notice") to the Debtors stating that the 2005 Note was in default. The Second Default Notice states as follows:

"If the default is not cured on or before September 6, 2006, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." Trustee's Ex. H (emphasis in original). Both parties stipulate that Countrywide Home Loans had the requisite standing to send the First Default Notice and the Second Default Notice.

On October 16, 2006, Wells Fargo commenced a foreclosure action against the Debtors in the Supreme Court of the State of New York, Suffolk County (the "2006 Foreclosure Action"). Paragraph 2 of the complaint (the "2006 Complaint") states that the Debtors executed and delivered the 2005 Note to Wells Fargo. Trustee's Ex. I. Paragraph 5 of the 2006

Complaint states that Wells Fargo "elects to call due the entire amount secured by the mortgage." Trustee's Ex. I.  On October 2, 2012, Wells Fargo and the Debtors executed a stipulation of discontinuance of the 2006 Foreclosure Action ("2012 Stipulation of Discontinuance"). Trustee's Ex. J. In the Attorney Affirmation by counsel to Wells Fargo, the attorney stated that "the reason for this request for cancellation is to allow the plaintiff to verify the assignment chain of the note and mortgage."  Trustee's Ex. K.   There was no statement in the Attorney Affirmation regarding revocation of acceleration of the 20015 Note, nor is there any record of a notice sent to the Debtors by Wells Fargo indicating that acceleration of the 2005 Note was revoked.

Approximately two months later, on December 12, 2012, Wells Fargo commenced a second foreclosure action against the Debtors (the "2012 Foreclosure Action"). Trustee's Ex. L. Paragraph 7 of the complaint (the "2012 Complaint") states that Wells Fargo "has elected and hereby elects to declare immediately due and payable the entire unpaid balance of the principal." In the 2012 Complaint, the name of the mortgagee includes the incorrect reference to the series date of the asset-backed receivable certificate.  Trustee's Ex. L.  On March 20, 2014, Wells Fargo and the Debtors executed a stipulation of discontinuance of the 2012 Foreclosure Action ("2014 Stipulation of Discontinuance").  Trustee's Ex. M.

On January 30, 2017, Wells Fargo commenced a third foreclosure action against the Debtors (the "2017 Foreclosure Action").  In this complaint, the name of the mortgagee is accurately identified, and mirrors the name of the mortgagee in the 2006 Complaint.  On February 9, 2017, the Debtors filed a petition for relief under Chapter 7, which stayed the 2017 Foreclosure Action.  Notwithstanding the automatic stay, on May 5, 2017, approximately three months after the Chapter 7 petition was filed, the Debtors filed and served an answer to the 2017

Complaint, in which the Debtors asserted various defenses including that the 2017 Foreclosure Action was time barred under the applicable statute of limitations, and by the doctrine of laches. Trustee's Ex. P. On May 15, 2017, the Defendant filed a notice of return and rejection of answer on the basis that the Debtors' answer was served after the deadline to file an answer expired. Trustee's Ex. Q.

The Trustee commenced this adversary proceeding seeking a declaratory judgment that the Fremont First Mortgage was satisfied by payment in full from the proceeds advanced in connection with the 2005 Note and 2005 Mortgage, and that the Fremont First Mortgage should be avoided pursuant to 11 U.S.C. § 506(d), and preserved for the benefit of the Debtors' estates pursuant to Bankruptcy Code § 551 ("First Cause of Action"). The Trustee also seeks a declaratory judgment that the 2005 Note became due and payable in full on September 7, 2006, and that the six year statute of limitations for commencing an action to foreclose on the 2005 Mortgage or an action on the 2005 Note for principal or for any interest began to run on September 7, 2006 and expired on September 7, 2012. Although the Defendant brought three foreclosure actions thereafter, the Defendant discontinued the only foreclosure action that was brought within the statute of limitations. Therefore, the six - year statute of limitations to bring a foreclosure action or to sue on the 2005 Note has expired, and the Trustee is entitled to a declaratory judgment under New York Real Property Actions and Proceedings Law ("RPAPL") Article 15 avoiding, cancelling and discharging the 2005 Note and 2005 Mortgage ("Second Cause of Action").

The Trustee now moves for summary judgment on the First Cause of Action and the Second Cause of Action, asserting as a matter of law that he is entitled to entry of judgment in his favor on both claims. Specifically, the Trustee seeks entry of judgment in his favor:

(i)      determining that the Fremont First Mortgage is satisfied and that the lien related to the Fremont First Mortgage is void pursuant to Bankruptcy Code § 506(d);

(ii)     directing the Clerk of Suffolk County to mark the Fremont First Mortgage as canceled and discharged of record;

(iii)    declaring that the Fremont First Mortgage is preserved for the benefit of the Debtors' estate pursuant to Bankruptcy Code § 551;

(iv)     barring forever the Defendant and every person claiming under the Defendant from any and all claims to an estate or interest in the Property;

(v)      declaring that the 2005 Note and 2005 Mortgage are void, cancelled and discharged pursuant to RPAPL § 1501;

(vi)     directing the Clerk of the County of Suffolk to cancel and discharge of record the 2005 Mortgage;

(vii)     determining that the Defendant holds no secured claim against the Debtors' estate and that the lien related to the 2005 Mortgage is void pursuant to Bankruptcy Code § 506(d);

(viii)   disallowing the Defendant's claim against the Debtors' estate in its entirety pursuant to Bankruptcy Code § 502;

(ix)     declaring that the 2005 Note and 2005 Mortgage are preserved for the benefit of the Debtors' estate pursuant to Bankruptcy Code § 551; and

(x)      adjudging and determining that the Plaintiff is the lawful owner and vested in title to the Property, free and clear of the 2005 Note and 2005 Mortgage.

The Defendant also moves for summary judgment, asserting that the Second Default Notice did not accelerate the 2005 Note because the language in the Second Default

Notice did not contain sufficiently clear and unequivocal language, and the commencement of the 2006 Foreclosure Action did not accelerate the 2005 Note because the 2005 Mortgage was not assigned to Wells Fargo until after commencement of the 2006 Foreclosure Action. Therefore, the 2006 Foreclosure Action was a nullity. According to the Defendant, the 2012 Foreclosure Action accelerated the maturity of the 2005 Note, and although the 2012 Foreclosure Action was discontinued, the 2017 Foreclosure Action was timely commenced within the six - year period after the acceleration took place. The Defendant argues in the alternative that even if the Court finds that the 2006 Foreclosure Action accelerated the 2005 Note, the voluntary discontinuance of the 2006 Foreclosure Action revoked the alleged acceleration of the 2005 Note. As a result, the six-year statute of limitations did not commence until the 2012 Foreclosure Action was filed, and although it was discontinued, the 2017 Foreclosure Action, which was stayed by the filing of this bankruptcy petition, was brought prior to expiration of the statute of limitations. Therefore, Wells Fargo's mortgage lien is enforceable and is not subject to discharge or cancellation under New York law.

## Discussion

### *Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. § 56(a). "Some alleged factual dispute" is not enough; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Facts are material where their resolution might affect the outcome of the suit under the governing law. *Id*. Once the moving party shows that there are no

issues of fact that could affect the outcome, the burden then shifts to the non-moving party to show specific, admissible evidence of a genuine, material dispute. Fed. R. Civ. P. § 56(c). "The mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson*, 477 U.S. at 252. All reasonable inferences must be drawn in the non-movant's favor, but speculative or conclusory statements are insufficient to defeat a motion for summary judgment. *Major League Baseball Properties, Inc. v. Salvino, Inc*., 542 F.3d 290, 310 (2d Cir. 2008) (other citations omitted).

Where both parties move for summary judgment, the merits of each motion must be independently evaluated. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "As part of the independent evaluation of cross-motions for summary judgment, the court must draw all reasonable inferences against the party whose motion is under consideration." *In re Zerbo*, 397 B.R. 642, 648 (Bankr. E.D.N.Y. 2008) (citing *Coach, Inc. v. Peters*, 386 F. Supp.2d 495, 497 (S.D.N.Y. 2005); and *Considine v. Schachter (In re Schachter)*, No. 05-9404, 2007 WL 2238293 (Bankr. S.D.N.Y. Aug. 1, 2007)). Where the movant does not have the burden of proof at trial, its burden is satisfied if it can demonstrate that there is an absence of evidence to support "an element essential to [the nonmovant's] case, and on which the [nonmovant] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this case, the Trustee bears the ultimate burden of proof at trial as to both causes of action.

### 1. *First Cause of Action*

The Trustee seeks entry of summary judgment on the First Cause of Action (i) determining that the Fremont First Mortgage is satisfied; (ii) determining that the lien related to the Fremont First Mortgage is void pursuant to 11 U.S.C. § 506(d); and (iii) preserving the Fremont First Mortgage for the benefit of the Debtors' estate under 11 U.S.C. § 551. According

to the Joint Statement of Undisputed Material Facts, there are no amounts due and owing under the Fremont First Mortgage and/or Fremont First Note. Because the Fremont First Mortgage has been satisfied, the Trustee seeks to utilize section 506(d) to avoid the Fremont First Mortgage as a mortgage of record on the Property.

11 U.S.C. § 506(d) provides:

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless –
> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

Section 502(b)(1) provides that a claim shall not be allowed to the extent it is unenforceable against the debtor and property of the debtor. The claims allowance process requires the filing of a claim and an objection to that claim. While the Trustee would be the proper party to object to a claim filed by Fremont regarding the Fremont First Mortgage, Fremont no longer exists and no proof of claim has been filed with respect to the Fremont First Mortgage. In addition, Fremont has not appeared in this case. Section 501(c) gives the Trustee the authority to file a proof of claim if a creditor does not timely file a proof of claim, but the Trustee has not done so in this case.

While the Defendant does not dispute that the Fremont First Note has been paid in full, § 506(d) may not be used in this case to avoid the Fremont First Mortgage. Section 506(d) is not a lien removal statute, and without a claims objection process, there is no claim to allow or disallow. The proper procedure for the Trustee to follow is to bring a proceeding in New York State Court pursuant to RPAPL § 1921 to have the Fremont First Mortgage marked canceled and

discharged as a lien of record against the Property.  Therefore, summary judgment is denied as to the First Cause of Action.

### 2. *Second Cause of Action*

In the Second Cause of Action, the Trustee seeks to cancel and discharge the 2005 Mortgage and 2005 Note under RPAPL § 1501(4). Section 1501(4) permits "[a] person having an estate or an interest in real property subject to a mortgage" to "seek to cancel and discharge that encumbrance where the period allowed by the applicable statute of limitations for the commencement of an action to foreclose the mortgage had expired, provided that the mortgagee or its successor was not in possession of the subject real property at the time the action to cancel and discharge the mortgage was commenced." *Lubonty v. U.S. Bank N.A.,* 74 N.Y.S.3d 279, 281 (2d Dep't 2018) (*citing* RPAPL § 1501(4)).

The Trustee invokes Bankruptcy Code § 544(a)(3) and § 502 as bases to obtain the relief requested in the Second Cause of Action.  Under § 544(a)(3), a Chapter 7 trustee is given, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, all of the rights and powers of a bona-fide purchaser of real property from the Debtor. As this Court previously held in *In re Asher*, 488 B.R. 58, 72 (Bankr. E.D.N.Y. 2013), the Court must determine whether the Trustee can satisfy the elements for BFP status under applicable New York State law.  Under New York law, a good faith purchaser has actual notice and constructive notice of what would be revealed by (1) any examination of the record, (2) a reasonable inquiry of those in actual possession, or (3) a reasonable inquiry based on the circumstances.  *In re Balco Equities Ltd., Inc.*, No. 04-3577 (CGM), Adv. Pro. No.  05-09005) (CGM), 2006 WL 898042, *10 (Bankr. S.D.N.Y. Mar 28, 2006) (citing *In re Mosello*, 193  B.R. 147, 151 (S.D.N.Y. 1996)).  However, § 544(a)(3) "does not clothe a trustee with this protective

mantle if there was no way, under applicable state law, that anyone could attain the status of a bona fide purchaser." *In re Borison*, 226 B.R. 779, 787 (Bankr. S.D.N.Y. 1998). Even in the case where mortgage of record is unenforceable, the mortgage cannot be avoided on the basis of a Chapter 7 trustee's status as a bona-fide purchaser under § 544(a)(3). *See In re Balco Equities Ltd., Inc.*, at *12 (other citations omitted).

The Trustee also cites to §§ 502 and 506 as the statutory authority for cancelling and discharging the 2005 Note and 2005 Mortgage. As set forth above, to the extent a lien secures a claim that is not an allowed secured claim, the lien is void. In addition, a claim that is unenforceable against the debtor may be expunged. While Nationstar did not file a proof of claim in this case, which is a prerequisite to determining whether a claim should be allowed, Nationstar did file the Lift Stay Motion. In the Lift Stay Motion, Nationstar clearly set forth the existence and nature of the debt, along with the amount of the claim, as well as an intent to hold the Debtors liable for the debt. *In re Enron Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007) (citing *Houbigant, Inc. v. ACB Mercantile, Inc.* (*In re Houbigant, Inc.*), 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1995)). Therefore, the Court deems the Lift Stay Motion to be informal proof of claim which may be amended by the filing of a proof of claim in this case.

In addition to the Trustee's right to object to claims filed in the Debtors' case, a Chapter 7 trustee may bring any cause of action that the debtor could have brought as of the commencement of the case. Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The Supreme Court as well as lower courts recognize that the scope of this section is broad and authorizes a trustee to bring any cause of action that the debtor could have brought under applicable state law as of the commencement of the case. *U.S. v.*

*Whiting Pools, Inc*., 462 U.S. 198, 204-205 (1983); and *Stanziale v. McGladrey & Pullen, LLP* (*In re Student Finance Corp*.), 334 B.R. 776, 778 (D. Del. 2005) (citing *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n. 5 (3d Cir. 2002)).

Because the Debtors had the right to commence an action under RPAPL § 1501(4) to cancel and discharge a mortgage on the Property as of the Petition Date, the Trustee succeeds to that right.  Finally, Fed. R. Bankr. P. 7001 provides that a proceeding to determine the validity, priority or extent of a lien on property of the debtor must be commenced by an adversary proceeding.  The Trustee has complied with this rule by filing a complaint in this case.

According to the Trustee, summary judgment should be granted in his favor on the Second Cause of Action because Wells Fargo failed to comply with the six-year statute of limitations imposed with respect to mortgage foreclosure actions under New York law.  The statute of limitations began to run either from the expiration of the Second Default Notice (September 7, 2006) or at the latest, October 16, 2006, when the First Foreclosure Action was commenced. Because Wells Fargo withdrew the First Foreclosure Action and failed to commence another foreclosure action within the six-year window, the statute of limitations to sue on the 2005 Note and 2005 Mortgage has expired.

According to the Defendant, the Second Cause of Action is meritless because as a matter of law, a foreclosure action was timely commenced within the six-year statute of limitations, and remains pending in the New York State Court. The Defendant reaches this conclusion by arguing that the First Default Notice and Second Default Notice did not accelerate the mortgage debt because the notices did not contain sufficiently clear and unequivocal language regarding acceleration.  In addition, the Defendant asks the Court to find that the First Foreclosure action was a nullity because Wells Fargo lacked standing to commence a foreclosure

action at the time the 2006 Foreclosure Action was commenced. The Defendant asserts that the 2005 Note was not accelerated until December 12, 2012, the date the Second Foreclosure Action was commenced.  Because Wells Fargo commenced the Third Foreclosure Action within six years of acceleration of the 2005 Note, the Trustee has no legal basis to prevail under RPAPL § 1501(4).

Before proceeding on the Trustee Motion and the Nationstar Motion, the Court believes it is important to review the distinct and to some degree different roles played by a note and mortgage in what is generically titled a foreclosure action under New York law.  "The note represents the primary personal obligation of the mortgagor, and the mortgage is merely the security for such obligation." *Corey v. Collins,* 782 N.Y.S.2d 51, 52 (1st Dep't 2004) (*quoting Copp v. Sands Point Marina*, 17 N.Y.2d 291, 293 (N.Y. 1966)); *see also Cohen v. Ditech Financial LLC,* 15-CV-6828 (LDW), 2017 WL 1134723, at *3 (E.D.N.Y. 2017) ("While the note is a debt, the mortgage is a type of security interest with real property as the collateral, that a lender can take if a debtor does not fulfill a payment obligation; it is not a promise to pay a debt.") (*quoting Hill v. DLJ Mortg. Capital, Inc.,* 15-CV-3083 (SJF), 2016 WL 5818540, at *7 (E.D.N.Y. 2016) (internal quotations omitted) (other citations omitted)). Therefore, the mortgage is not independently enforceable as a debt, whereas a note is enforceable on its own.  *Deutsche Bank Nat. Trust Co. v. Pietranico*, 928 N.Y.S.2d 818, 830-831 (Sup. Ct. N.Y. 2011) (citing *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 838 N.Y.S.2d 622 (2d Dep't 2007)).

Under RPAPL § 1301, the holder of a note and mortgage must choose to seek relief by commencing an action either on the note or by foreclosing on the mortgage, which is known as an election of remedies.  *VNB New York Corp. v. Paskesz*, 18 N.Y.S.3d 68, 69 (2d Dep't 2015) (other citations omitted).  A foreclosure action is an action under equity.  *Valley Sav. Bank v.*

*Rose*, 646 N.Y.S.2d 349, 351-351 (2d Dep't 1996) (citing *Jamaica Sav. Bank v. M.S. Investing Co.*, 274 N.Y. 215, 219 (N.Y. 1937)). As a result, an action to foreclose a mortgage is solely an action to collect the mortgage debt out of the land pledged by enforcing the lien granted under the mortgage. *Reichert v. Stilwell*, 172 N.Y. 83, 88 (N.Y. 1902). As stated in *Reichert v. Stilwell*, "[a]n action to enforce a mortgage is not an action *in personam* to recover a debt from an individual, but is in the nature of a proceeding *in rem* to appropriate the land by foreclosing the lien of the mortgage and applying the proceeds to discharge the debt." *Id.*, 172 N.Y. at 89. [1] In this case, it is undisputed that Wells Fargo elected to foreclose on the 2005 Mortgage.

### a. Commencement of the Statute of Limitations

New York "statutes of limitation serve the same objectives of finality, certainty and predictability that New York's contract law endorses. Statutes of limitation not only save litigants from defending stale claims, but also express a societal interest or public policy of giving repose to human affairs." *ACE Secs. Corp. v. DB Structured Prods., Inc.,* 25 N.Y.3d 581, 593 (N.Y. 2015) (internal quotations omitted) (*citing John J. Kassner & Co. v. City of New York,* 415 N.Y.S.2d 785 (N.Y. 1979)).

The statute of limitations for commencing a mortgage foreclosure proceeding or an action on a note is six years in New York. C.P.L.R. § 213 ("[A]n action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property, or any interest therein" must "be commenced within six years."). Typically, the statute of limitations for a foreclosure action pursuant to a note paid in installments "begins to run from the due date for each unpaid installment." *Costa v. Deutsche Bank Nat'l Trust Co.,* 247 F. Supp. 3d 329, 340 (S.D.N.Y. 2017)

---

[1] A plaintiff in a foreclosure action may seek a deficiency judgment in the complaint, as incidental to the equitable relief of foreclosure. RPAPL § 1371(2).

(*citing Plaia v. Safonte,* 847 N.Y.S.2d 101, 102 (2d Dep't 2007)). Separate causes of action accrue for each installment that is not paid. *Wells Fargo Bank, N.A. v. Burke,* 943 N.Y.S.2d 540, 542 (2d Dep't 2012). "Even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the statute of limitations begins to run on the entire debt." *EMC Mortg. Corp. v. Patella*, 720 N.Y.S.2d at 162; *Federal Nat. Mortg. Ass'n v. Mebane,* 618 N.Y.S.2d at 88, 90 (2d Dep't 1994) ("*Mebane*") ("Once the mortgage debt was accelerated, the borrowers' right and obligation to make monthly installments ceased and all sums became immediately due and payable. Therefore, the six-year [s]tatute of [l]imitations began to run at that time."). Determining when a note secured by a mortgage is accelerated is a key aspect in an action commenced pursuant to RPAPL § 1501. *Milone v. U.S. Bank, N.A.,* 83 N.Y.S.3d 524, 529 (2d Dep't 2018).

"Acceleration of a repayment obligation in a note or bond changes the date of maturity from some point in the future to an earlier date based on the debtor's default under the contract." *NML Capital v. Republic of Argentina,* 952 N.E.2d 482, 492 (2011) ("When NML Capital accelerated $32 million of the debt in February 2005, it altered the maturity date for that debt from April 2005 to February 2005") (*citing* Black's Law Dictionary 12 (9th ed. 2009)). *See also In re AMR Corp.,* 730 F.3d 88, 103 (2d Cir. 2013) ("Acceleration changed the date of maturity from some point in the future . . . to an earlier date based on the debtor's default under the contract.") (*quoting Analytical Surveys, Inv. v. Tonga Partners, L.P.,* 684 F.3d 36, 44 (2d Cir. 2012)).

Pursuant to the 2005 Note and 2005 Mortgage, the lender had the option to accelerate the loan if the borrower failed to perform. Trustee's Ex. A, section 7(c) ("If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a

certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount."); Trustee's Ex. B, section 22 (". . . if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that [borrower] pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument.").

Where acceleration is optional under a note and mortgage, "some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision, and until such action has been taken the provision has no operation." *Costa,* 247 F. Supp. 3d at 340 (*citing Wells Fargo Bank, N.A. v. Burke,* 94 A.D. at 982-83). "Although either notice of a demand or commencement of a foreclosure action can constitute an affirmative act of acceleration, where the notice of default provides 'clear and unequivocal' language that a loan would become due in its entirety upon expiration of the curing period, the date of expiration provided in the notice serves as the date of acceleration for the purposes of the six-year statute of limitations." *Assets Recovery 23, LLC v. Gasper*, 15 CV 5049 (CLP), 2017 WL 3610568, at *8 (E.D.N.Y. Jul 25, 2017) (*citing Costa*, 247 F. Supp. 3d at 342).

New York case law on acceleration traces back to the New York Court of Appeals decision *Albertina Realty Co. v. Rosbro Realty Corp.,* 258 N.Y. 472 (N.Y. 1932). In *Albertina Realty Co.,* the mortgagee elected to accelerate a mortgage by filing a summons, verified complaint, and *lis pendens*. The main issue was whether mortgagor's payment of an installment three days after the action was commenced nullified the acceleration brought about by the filing of the complaint.

The mortgagor argued that it was entitled to a cure period prior to acceleration under the contract. The mortgage's acceleration clause provided a 30-day cure period for *interest* defaults.

The default at issue was on *principal*. Therefore, no cure period was required under the parties'
contract. The mortgagor's subsequent attempt to tender an installment payment three days after
commencement of the action was properly rejected by the mortgagee because the acceleration
already occurred upon the filing of the sworn statement representing the mortgagee's election to
accelerate. The fact that the mortgagor tendered payment before the summons could be served
was of no consequence because the mortgagee had already elected to accelerate the entire debt as
evidenced by the sworn statement contained in the complaint. The court reasoned that the
complaint contained the election to accelerate and service of the summons was merely notice of
such election. It also made clear that the filing of a verified complaint is not the only way to
accelerate a debt:

> It is unnecessary to decide just what a holder of a mortgage must do
> to exercise the right of election, under an acceleration clause. We
> are satisfied, however, that the unequivocal overt act of the plaintiff
> in filing the summons and verified complaint and *lis
> pendens* constituted a valid election. It disclosed the choice of the
> plaintiff and constituted notice to all third parties of such choice. To
> elect is to choose. The fact of election should not be confused with
> the notice or manifestation of such election. The complaint recited
> that the plaintiff had elected. The mere fact that before the summons
> could be served, the defendant made a tender, did not as a matter of
> law destroy the effect of the sworn statement that plaintiff had
> elected.

*Albertina Realty Co.,* 258 N.Y. at 476.

     While New York courts consistently hold that an acceleration must be "clear" and
"unequivocal" to take effect, the courts are split on whether a notice of default can constitute a
"clear and unequivocal" assertion of an exercise of the option to accelerate the debt. *See Milone
v. US Bank N.A.*, 83 N.Y.S.3d at 529.  Courts in the First Department have adopted the position
that a notice of default stating the lender "will accelerate" or that the debt "will be accelerated"
upon the expiration of the cure period is clear and unequivocal notice that the loan balance is due

upon the expiration of the cure period. *Deutsche Bank Nat'l Trust Co. v Royal Blue Realty Holdings, Inc.,* 48 N.Y.S.3d 597 (1st Dep't 2017) ("*Royal Blue*"); *Vargas v. Deutsche Bank Nat'l Trust Co.,* c, 33 (1st Dep't 2019) (holding letter sent by the defendant's predecessor in interest to the plaintiff stating that debt "will [be] accelerated" and "foreclosure proceedings will be initiated" if the plaintiff failed to cure in 32 days clearly and unequivocally expressed an intent to accelerate); *Deutsche Bank National Trust Co. v. Unknown Heirs of Estate of Souto*,  41 N.Y.S.3d 718 (Table) (Sup. Ct. N.Y. 2016), 2016 WL 3909071 at *2-3 (N.Y. Sup. Ct., New York County, Jul 5, 2016) (finding acceleration occurred 31 days after the plaintiff sent a notice letter to the defendant stating the plaintiff "will accelerate the Loan balance and proceed with foreclosure" because the letter discussed "a future event that [was] guaranteed to occur if the money wasn't paid" and "there [was] no indication that plaintiff [was] only kidding about the thirty day deadline").

In *Royal Blue*, the court granted the defendant's motion for summary judgment dismissing the foreclosure complaint as time-barred and denied the plaintiff's cross-motion for summary judgment. The issue was whether notice letters from the plaintiff's predecessor in interest provided clear and unequivocal notice that creditor "will" accelerate the loan and foreclose unless the borrower cured his default within 30 days. The court held that acceleration was triggered upon the expiration of the cure period described in the letters. *Royal Blue,* 48 N.Y.S.3d at 597 ("When the borrower did not cure his defaults within 30 days, all sums became immediately due and payable and plaintiff had the right to foreclose on the mortgages pursuant to the letters.").

The Second Department has reached a different conclusion regarding identical language in notice letters.  Recently, the Second Department expressly rejected *Royal Blue* when a court in

the Second Department held that "will" language in a notice of default did not communicate a

clear and unequivocal notice of acceleration. *Milone v. U.S. Bank Nat'l Ass'n*, *Milone v. U.S.*

*Bank, N.A.,* 83 N.Y.S.3d at 527.  See also *U.S. Bank Nat'l Ass'n v. Sopp*, 170 A.D.3d 776, 778

(2d Dep't 2019) (finding identical language to be "merely an expression of future intent that fell

short of an actual acceleration").

Decisions in the Southern and Eastern Districts of New York are consistent with the First

Department in concluding that a notice of default stating a debt "will be accelerated" if the

default is not cured upon expiration of the grace period is sufficiently clear and unequivocal to

accelerate the debt.  In *Costa*, the District Court found that a notice of default providing

"[f]ailure to cure the default on or before [date] will result in the acceleration of the sums secured

by the above mortgage and sale of the mortgaged premises" expressed a clear and unequivocal

statement of acceleration. The *Costa* court was careful to distinguish the notice itself from the

timeline set by the notice when it held that acceleration occurred. The expiration of the cure

period is what triggered acceleration; the "[n]otice itself lit the acceleration fuse." *Costa,* 247 F.

Supp. at 342.  Likewise, the District Court for the Eastern District of New York recognized that a

notice of default stating "we will accelerate and declare the entire balance due and will foreclose

on the Security instrument by judicial proceeding" included the clear and unequivocal language

that is required to find that acceleration of the note occurred upon the expiration of the cure

period.  *Assets Recovery 23, LLC v. Gasper*, 15 CV 5049 (RJD) (CLP), 2017 WL 3610568, at *9

(E.D.N.Y., Jul. 25, 2017).  Again, in *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 86.

(E.D.N.Y. 2019), the District Court for the Eastern District of New York held that acceleration

occurred and the statute of limitations period began on June 28, 2016 when a notice of default

sent on March 30, 2016 stated that the mortgage debt would be accelerated on June 28, 2019 if the borrower failed to cure the default by that date.

The Court agrees with the Trustee that the Second Default Notice, which provides clear and unequivocal notice that the 2005 Note would become due in its entirety upon expiration of the cure period, served to accelerate the 2005 Note.  The 2005 Note gives the lender the option, upon a default in payment, of sending a written notice requiring immediate payment in full of all unpaid amounts thirty days after the date the notice is mailed or delivered.  This option is also set forth in the 2005 Mortgage, which also provides that if the lender requires "Immediate Payment in Full," the lender may bring a foreclosure action.  The 2005 Mortgage also provides that before triggering Immediate Payment in Full, the lender must send a notice of default, which sets forth the default, the date by which the default must be cured, and a recitation that if the default is not corrected, the lender may require Immediate Payment in Full.   Once this option of acceleration was chosen, and the Debtors did not cure the default within the specified time period, the six-year statute of limitations on the mortgage note commenced.

Because the 2005 Note and 2005 Mortgage make loan acceleration an option, the mortgagee must take the clear and unequivocal step of acceleration to commence the statute of limitations.  The Second Default Notice satisfied this requirement, and the Court's conclusion is consistent with the procedures and notice requirements outlined in the 2005 Note and 2005 Mortgage.  To the extent some New York State courts have found that language similar to that in the Second Notice of Default are insufficient to accelerate the 2005 Note, the Court declines to follow them.  For example, in *Bank of New York Mellon v. Maldonado*, 97 N.Y.S.3d 162, 165 (2d Dep't 2019), which is cited by the Defendant, the Appellate Division held that the language "was merely an expression of future intent that fell short of an actual acceleration" and it did not

constitute an exercise of the acceleration clause in the mortgage.  (citing *Milone* , 83 N.Y.S.3d 524; *DLJ Mtge. Capital, Inc. v. Hirsh*, 78 N.Y.S.3d 160 (2d Dep't 2018); and *21ˢᵗ Mortg. Corp. v. Adames*, 60 N.Y.S.3d 198 (2d Dept 2017)).  However, the Court did not give any rationale for finding that the language in the notice was an expression of future intent and did not act to accelerate the debt*,* and the cases the Court cited in support do not clearly involve notices containing language identical to the Second Default Notice. To find that the language in the Second Default Notice was insufficiently clear and unequivocal to accelerate the 2005 Note would also render the three subsequent foreclosure actions violative of the terms of the 2005 Mortgage.  Under its terms, only a notice of default could trigger acceleration of the 2005 Note, and was a prerequisite to commencing a foreclosure action.  That notice gave rise to the right to commence a foreclosure action, which, if brought properly, would stop the clock on the six-year statute of limitations.

The decision by the Southern District of New York in *Costa* is more persuasive.  In *Costa*, the court ruled that identical operative language in a notice of default constituted a clear and unequivocal expression of the lender's acceleration of the loan.  In support of its finding, the court cited to *Deutsche Bank National Trust Co. v. Unknown Heirs of Estate of Souto*,  2016 WL 3909071 at *2 in which a notice containing identical language to the Second Default Notice was found to have accelerated the note.  As the court noted, "'[t]his is not a wishy-washy notice" and should be read literally.

Therefore, the Court concludes that under the operative language of the Second Default Notice, the 2005 Note was accelerated on September 7, 2006.  This acceleration triggered the commencement of the six-year statute of limitations to bring a proper foreclosure proceeding.

The six-year statute of limitations expired on September 6, 2012, unless it was revoked or tolled by some action of the parties.

### b. *2006 Foreclosure Action*

Wells Fargo commenced three different foreclosure proceedings with respect to the 2005 Mortgage. The 2006 Foreclosure Action was commenced on October 19, 2006, which was well within the statute of limitations. However, the 2012 Foreclosure Action and the 2017 Foreclosure Action were both commenced beyond the statute of limitations as determined by the Court. The Court will now undertake an analysis of each foreclosure action and its effect, if any, on the expiration of the statute of limitations. Because the Trustee Motion is being reviewed first, the Court will draw any inferences in favor of the Defendant.

The 2006 Complaint contains references to the 2005 Mortgage and 2005 Note, and alleges that the Debtors delivered the 2005 Note to Wells Fargo. The Complaint also states that the 2005 Mortgage is "to be" assigned to Wells Fargo. The Defendant asserts in its opposition papers that Wells Fargo did not have standing to commence the 2006 Complaint, which rendered the 2006 Foreclosure Action a nullity, because the 2005 Mortgage was not assigned to Wells Fargo until after the 2006 Complaint was filed. The Defendant fails to address the location of the 2005 Note at the time the 2006 Foreclosure Action was filed. The only evidence the Court has regarding the whereabouts of the 2005 Note at that point in time is in the 2006 Complaint itself, in which Wells Fargo alleges that the 2005 Note was delivered to Wells Fargo on March 16, 2005. The 2006 Complaint includes a sworn affidavit by an attorney for Wells Fargo that the statements therein are true and are based on the "original note [and] mortgage". Trustee's Ex. I.

As a matter of law, the Court finds that Wells Fargo had standing to commence the 2006 Foreclosure Action because the 2006 Note was delivered to Wells Fargo prior to the

commencement of this action.  Under New York law, a plaintiff has standing to commence a foreclosure action when it is the holder or assignee of both the mortgage and the underlying note at the time the action is commenced.  *Kondaur Capital Corp. v. McCary*, 981 N.Y.S.2d 547, 548 (2d Dep't 2014); *HSBC Bank USA v. Hernandez*, 939 N.Y.S.2d 120 (2d Dep't 2012); *Bank of N.Y. v. Silverberg,* 926 N.Y.S.2d 532, 537 (2d Dep't 2011).   A plaintiff may demonstrate that it is the holder of the underlying note by showing a written assignment of the note or by the physical delivery of the note.  *Kondaur Capital Corp. v. McCary*, 981 N.Y.S.2d at 548. As the Defendant correctly recites, once a promissory note is tendered and accepted by an assignee, the mortgage passes as an incident to the note as a general matter.  *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d at 537; *US Bank N.A. v. Coppola*, 68 N.Y.S.3d 120, 122 (2d Dep't 2017) (The physical delivery of the note before commencement of a foreclosure action transfers the obligation, and the mortgage passes with the note as incident thereto).  In contrast, the transfer of a mortgage without a debt is a nullity because a mortgage is merely security for a debt and cannot exist independently of the debt or obligation.  *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d at 537.

In this case, the evidence supports a finding that Wells Fargo had possession of the 2005 Note as of the date the 2006 Complaint was filed, and there is no evidence to contradict this finding.  In the submissions to the Court, the Defendant is careful to focus solely on the status of the 2005 Mortgage, and fails to address the effect of Wells Fargo's possession of the 2005 Note. Given the Defendant's recognition that the mortgage passes as incident to the note, and the prior statement by Wells Fargo that it received the 2005 Note from the Debtors, the Court finds that Wells Fargo had standing to commence the 2006 Foreclosure Action.

### c.  2012 Stipulation of Discontinuance

Having established that the 2006 Foreclosure Action was validly commenced, the Court must now consider whether the 2012 Stipulation of Discontinuance served to revoke or otherwise nullify the effect of the Second Default Notice.  The law is clear that once a debt underlying a note and mortgage is accelerated, the statute of limitations can be restarted by an affirmative act of the lender during the statute of limitations period.  *U.S. Bank Nat'l Ass'n v. Deochand*, 2017 NY Slip Op. 30472(U), ¶ 4 (Sup. Ct.) (citing *EMC Mtge. Corp. v. Patella*, 720 N.Y.S.2d at 161 and *Kashipour v. Wilmington Savings Fund Society, FSB*, 41 N.Y.S.3d 738, 739 (2d Dep't 2017)).  A lender may revoke an election to accelerate a mortgage debt, but it must do so "by an affirmative act of revocation occurring during the six-year statute of limitations period."  *NMT Realty Corp. v. Knoxville 2012 Trust,* 58 N.Y.S.3d 118, 120 (2d Dep't 2017). Clearly, if the court dismisses an action on its own motion, then revocation cannot have taken place because the court and not the lender affirmatively acted to terminate the action.  *Mebane*, 618 N.Y.S.2d at 89.

In this case, the Debtors and Wells Fargo executed the 2012 Stipulation of Discontinuance which resulted in the dismissal of the 2006 Foreclosure Action.  The proffered reason for the discontinuance was Wells Fargo's wish to ascertain the chain of title for the 2005 Note and 2005 Mortgage.  Approximately two months later, Wells Fargo commenced the 2012 Foreclosure Action. According to the Trustee, where an action is dismissed with a stipulation of discontinuance, the stipulation will not revoke an acceleration unless there is an express reference to the acceleration and the mortgagor is informed that the mortgagee is willing to accept installment payments.  Because the 2012 Stipulation of Discontinuance and the accompanying filings did not include any reference to revocation of the acceleration and Wells Fargo in fact filed another foreclosure action two months later, Wells Fargo failed to revoke the

acceleration of the 2005 Note.  The Defendant alleges that the 2012 Stipulation of

Discontinuance did in fact revoke the acceleration of the 2005 Note.  The basis for the

Defendant's contention is that discontinuance of the foreclosure action annuls everything that

took place in the foreclosure action.  Since the Defendant asserts that the commencement of the

2006 Foreclosure action accelerated the 2005 Note, the allegations in the complaint that Wells

Fargo was exercising its right to accelerate the maturity of the 2005 Note were nullified as well.

The New York Court of Appeals has not decided whether the voluntary discontinuance of

a foreclosure action suffices to revoke a prior acceleration.  The lower courts are split, and the

Trustee and the Defendant can each find caselaw that supports their positions.  In support of his

argument, the Trustee cites to *Bank of N.Y. Mellon v. Craig*, 93 N.Y.S.3d 425, 428 (2d Dep't

2019) ("*Craig*"); *Freedom Mtge. Corp. v. Engel*, 81 N.Y.S.3d 156, 159 (2d Dep't 2018)

("*Engel*"); and *U.S. Bank Trust, N.A. v. Aorta*, 89 N.Y.S.3d 717 (2d Dep't 2018) ("*Aorta*"),

among other cases.  These appellate cases all hold that discontinuance of a foreclosure action

alone does not constitute an affirmative act of revocation.   The Defendant also cites to several

cases, including *Mebane* (dismissal of an action by a court did not constitute an affirmative act to

revoke acceleration, which was unlike a withdrawal of an action by a lender).  The other New

York appellate level cases cited by the Defendant do not concern the effect of a discontinuance

in a foreclosure proceeding, but stand for the proposition that when an action is discontinued,

everything done in the action is annulled, including all prior orders in the case.  *Newman v.*

*Newman*, 665 N.Y.S.2d 423 (2d Dep't 1997).  The remainder of cases cited by the Defendant are

trial court level cases, including *Wells Fargo Bank, N.A. v. Rodriguez*, 62 Misc.3d 1211(A) N.Y.

Sup. Ct., Queens Cty., 2019); *Ditech Fin. LLC v. Naidu*, 2016 N.Y. Misc. LEXIS 4018 at *3-4

(N.Y. Sup. Ct., Queens Cty., 2016); *4 Cosgrove 950 Corp. v. Deutsche Bank National Trust Co.*,

2016 N.Y. Misc. LEXIS 4901 at *5 (N.Y. Sup. Ct., New York Cty., 2016); and *U.S.Bank N.A. v. Wongsonadi*, 55 N.Y.S.3d 695 (Table) (Sup. Ct., Queens Cty., 2017). In each of these trial court cases, the filing of the complaint accelerated the debt. Therefore, once the action was discontinued, the election to accelerate contained in the complaint was nullified along with the remaining events that took place in the foreclosure proceeding.

In the case before the Court, the acceleration took place as a result of the Second Default Notice, not as a result of the 2006 Foreclosure Action. Therefore, the *Newman* principle cited by the Defendant that everything done in the action is annulled after the voluntary discontinuance would not apply to the Second Default Notice. Even if this Court adopts this principle as the Defendants urge, the Second Default Notice would remain undisturbed and unaffected by the dismissal of the 2006 Foreclosure Action.

Some courts have taken a middle ground, holding that a triable issue of fact is raised regarding whether a mortgagee has affirmatively revoked its election to accelerate the mortgage when a stipulation of discontinuance is entered in a foreclosure action. In *NMT Realty Corp. v. Knoxville 2012 Trust*, 58 N.Y.S.3d 118, the Second Department held that where a mortgagee seeks and obtains a stipulation of discontinuance without any further evidence regarding why the discontinuance was sought, a triable issue of fact is raised regarding whether there was an affirmative act to revoke a prior election to accelerate.

In this case, the stated reason for discontinuing the 2006 Foreclosure Action, which was to ascertain the chain of assignments of the 2005 Note and 2005 Mortgage, coupled with the fact that Wells Fargo filed the 2012 Foreclosure Action two months later, support a finding that Wells Fargo had no intention of revoking the acceleration of the 2005 Note. In addition, the Debtors made no more payments on the 2005 Note and 2005 Mortgage after August 2, 2006.

TR's Exhibit E.  It is also undisputed that the Debtors did not receive any notices of default after the Second Default Notice.

For the reasons stated above, the Court finds as a matter of law that the statute of limitations began to run on September 7, 2006, which is thirty days after the date of the Second Notice of Default, and expired on September 6, 2012.  The 2006 Foreclosure Action was timely commenced and Wells Fargo had standing to commence it.   Wells Fargo represented in the 2006 Complaint that it received the 2005 Note from the Defendants and the record is devoid of any evidence that Wells Fargo made misrepresentations in the 2006 Complaint.  The decision by Wells Fargo to discontinue the 2006 Foreclosure action did not act to revoke the acceleration of the 2005 Note.  Furthermore, if the Court were to accept the Defendant's argument that the acceleration was revoked by the stipulation of discontinuance of the 2006 Foreclosure Action, the Court would also have to find that the stipulation of discontinuance of the 2012 Foreclosure revoked the 2012 acceleration.  If this were the case, then Wells Fargo could not collect the entire amount due and owing under the 2005 Note.  The 2012 Foreclosure Action and the 2017 Foreclosure Action were brought outside the six-year statute of limitations applicable to mortgage foreclosure actions and were untimely.  Having made these conclusions, the Court will now consider the remaining issues raised by the Defendant in its Motion for Summary Judgment.

### d.   Retroactive Application of Case Law Regarding Revocation of Acceleration

In its motion papers, the Defendant argues that the discontinuance of the 2006 Foreclosure Action effectively revoked the acceleration of the 2005 Note, and relies principally upon *Mebane*.  In this decision, the Second Department Appellate Division held that where a foreclosure action is dismissed *sua sponte* by a court, there is no evidence of an affirmative act to revoke its election to accelerate the note.   As the Court noted, the mortgagee did not withdraw

the foreclosure action, and the Court highlighted that the plaintiff persisted in its attempts to foreclose by making a failed attempt to revive the prior foreclosure action, and continued to seek recovery of the entire mortgage debt thereafter. *Id.* The Defendant also cites to a more recent Second Department case, *NMNT Realty Corp. v. Knoxville 2012 Trust*, claiming that it provides support for finding that a lender could revoke its prior acceleration by withdrawing the foreclosure action, unless the borrower detrimentally relied on the acceleration.    According to the Defendant, it relied on *Mebane* when deciding whether to discontinue the 2006 Foreclosure Action. This reliance was justifiable according to the Defendant, but a close reading of *Mebane* reveals that it does not stand for the proposition that a voluntary discontinuation of a foreclosure proceeding revokes an acceleration of the note.  The ruling in *Mebane* was more narrow, and the Court actually held that dismissal of a foreclosure action by a court was not an affirmative act to revoke acceleration of a note. The Court noted that the mortgagee never voluntarily withdrew the foreclosure action and continued to pursue foreclosure, but this is *dicta*.

Certainly, the Defendant was free to rely on any theory it wanted when it decided to discontinue the 2006 Foreclosure action, but *Mebane* does not stand for the proposition that acceleration of a note can be revoked by withdrawing a foreclosure action.  The *Mebane* Court itself noted that the mortgagee continued to pursue foreclosure after the action was dismissed, which was a factor in determining whether the mortgagee intended to revoke the acceleration of the note at the time the court dismissed the foreclosure action. *Mebane*, 618 N.Y.S.2d at 90.

As a final argument against considering the later decisions by the Second Department in *Craig*, *Engel* and *Aorta*, the Defendant argues that these cases are a "drastic departure" from *Mebane* and *Knoxville 2012 Trust*, according to which a lender could withdraw the prior foreclosure action to revoke acceleration of a note. Because of this change in decisional law, the

Defendant argues that this change be applied prospectively.  The major flaw in the Defendant's argument is that neither *Mebane* nor *Knoxville 2012 Trust* held that a voluntary discontinuance of a foreclosure action, which is silent as to whether the mortgagee was revoking an acceleration, and did not otherwise indicate that the mortgagee would accept installment payments from the mortgagor, served to revoke an acceleration.  In fact, the Court in *Engel* cited to *Mebane* and *Knoxville 2012 Trust* for the proposition that the stipulation discontinuing the foreclosure action "did not, in itself, constitute an affirmative act to revoke its election to accelerate, since, *inter alia*, the stipulation was silent on the issue of the revocation of the election to accelerate." *Engel,* 81 N.Y.S.3d at 633.  In addition, the *Craig* and *Aorta* decisions do not contain any direction that their findings be applied only prospectively, most likely because those courts did not consider their rulings to be a sharp change in decisional law.  Finally, without a finding in *Engel*, *Craig* or *Aorta* that the rulings be applied prospectively, there is no basis to even argue that they should not apply.  The case law cited by the Defendant in support of this point concerned whether a decision previously entered, which relied on decisional law before a higher court abrogated that rule, should be overturned in light of the new rule.  *People v. Mitchell*, 80 N.Y.2d 519 (N.Y. 1992); and *Busa v. Busa*, 609 N.Y.S.2d 452 (3d Dep't 1994).   In our case, there is no judicial decision that needs to be overturned or modified in light of case law that evolved after that decision was entered.

> ### e. *Waiver of Statute of Limitations as a Defense to the 2017 Foreclosure Action*

The final issue raised in the Nationstar Motion is whether the Debtors waived the right to assert a statute of limitations defense by failing to raise it in the 2017 Foreclosure Action.   N.Y. C.P.L.R. § 3211(e) provides that a statute of limitations defense is waived if it is not raised in a responsive pleading. (McKinney's 2006). According to the Defendant, the Debtors waived any

statute of limitations defense because the answer, which contained a statute of limitations defense, was served untimely.  What the Defendant fails to acknowledge is that the Debtors filed the petition on February 9, 2017, which was before the deadline for filing an answer in the 2017 Foreclosure Action.  Trustee's Ex. Q.   The filing of the Debtors' petition operated as a stay of any act to "enforce any lien against property of the estate".  11 U.S.C. § 362(a)(4).  In addition, § 558 of the Bankruptcy Code provides that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation . . . . A waiver of such defense by the debtor after the commencement of the case does not bind the estate."  11 U.S.C. § 558.  Therefore, even if the Debtors had waived the statute of limitations as a defense by failing to timely file their answer, the Trustee would not be bound by such waiver.

In addition to the above, the Defendant has not argued that a waiver of a statute of limitations defense would also constitute a waiver of the estate's statutory right to seek affirmative relief under RPAPL § 1501.  Therefore, the Court finds that there is no basis to conclude as a matter of law that the Trustee is barred from seeking relief under RPAPL § 1501 based on the Debtors' alleged waiver of the statute of limitations defense in the 2017 Foreclosure Action.

### f.  Summary

With respect to the Second Cause of Action, the Trustee, who has the ultimate burden of proof, has established as a matter of law that he is entitled to relief under RPAPL § 1501(4).  The six-year statue of limitations commenced on September 7, 2006, 30 days after the date of the Second Notice of Default, and expired on September 6, 2012.  During this six year period, the Defendant commenced the 2006 Foreclosure Action, but withdrew this action pursuant to the 2012 Stipulation of Discontinuance.  The 2006 Complaint contains a representation by the

Defendant that it received the 2005 Note from the Defendants, and the 2012 Stipulation of Discontinuance does not refute this assertion.  The 2012 Stipulation of Discontinuance also did not provide that the Defendant was revoking the acceleration of the 2005 Note, or that the Defendant would resume accepting monthly payments from the Debtors.  The 2012 Foreclosure Action and the 2017 Foreclosure Action were commenced after the statute of limitations expired.  Based on applicable law, the Court finds the 2005 Mortgage is invalid and unenforceable as a matter of law.  Given that the 2005 Note also has a six-year statute of limitations, the Court finds that the 2005 Note is unenforceable as well.  Therefore, the Defendant is barred from seeking payment from the Debtors on the 2005 Note.

### Conclusion

For the reasons set forth above the Court finds as follows:

A) The Trustee's Motion for Summary Judgment is denied as to the First Cause of Action.

B) The Trustee's Motion for Summary Judgment is granted as to the Second Cause of Action.

C) The Defendant's Motion for Summary Judgment as to the Second Cause of Action is denied in its entirety.

Because the First Cause of Action has not been resolved, the Court will hold a pretrial conference on February 12, 2020 at 9:30 a.m. with respect to the First Cause of Action only. The Court shall enter an Order and Judgment memorializing this Memorandum Decision.



**Dated: Central Islip, New York**
**November 27, 2019**

**Robert E. Grossman**
**United States Bankruptcy Judge**